SMITH & BELL vs. STEPHENS.

1. As a general rule, a bailee may deliver goods deposited with him, to the bailor or his order, although they may have been sold by the bailor since his deposit.

2. Where a bailee having a lien on goods, agreed with a vendee of the bailor to deliver them to him upon payment of charges, and then refused to comply with his agreement, and delivered them to the bailor, it is evidence of a conversion.

APPEAL from Platte Circuit Court.

NAPTON, J., delivered the opinion of the court.

This was an action of trover brought by Smith to recover the value of a pair of burr mill-stones, alleged to have been converted by the defendants to their use.

The facts of the case appear to have been as follows: One Cornman deposited the mill-stones and irons appurtenant thereto, in the warehouse of one Cunningham, in the town of Weston, and Bell & Stephens, the defendants, succeeded Cunningham in the occupation of the warehouse, and in the custody of said mill-stones as warehousemen. Whilst the mill-stones were in this custody, Cornman sold them to one Whitmore, and Whitmore sold them to the plaintiff, Smith. It was the

understanding on both sales, that Cornman was to pay the charges on said mill-stones. Shortly after the sale to the plaintiff, the plaintiff and Whitmore called on Bell, one of the. defendants, to get the mill-stones, but they were told that there were charges on them, and they would retain possession until the charges were paid; upon being informed that Cornman was to pay the charges, the defendants still declined letting the mill-stones go, until their. charges were paid. Bell, however, acknowledged at the time of this refusal, that he was well aware of the sale from Cornman to Whitmore, and of Whitmore to plaintiff, and that plaintiff was justly entitled to the stones. Upon another occasion, the plaintiff again applied to Bell for the stones, and upon his again refusing to let them go until the charges were paid, the plaintiff agreed to pay the charges and give an indemnifying bond, and a day was fixed when plaintiff was to pay the charges and give the bond, and the defendants were to deliver the stones. The plaintiff attended on the appointed day, but Bell had gone to Liberty; and on that night Bell returned on a boat, and delivered the mill-stones to one Utt, who took them on board the same boat Bell had left.

A witness testified that he called upon defendants, and told them at plaintiff's request, that he, plaintiff, would sue them, to which Bell, one of the defendants, replied, "he did not care a damn; he had delivered them upon Corman's order to Utt, and that Utt had paid the charges on them, and given an indemnifying bond." This witness further stated, that the day after the one set by Smith and Bell, for the delivery of the mill-stones to Smith, Smith came in for the purpose of completing the arrangement which had been previously made between them.

Whitmore, testified, that he had bought the stones of Cornman for $300, and sold them to Smith the plaintiff, who paid him; that he and Smith went to defendants, and stated the contract to them.

Cornman, testified, that he sold the said stones to Whitmore, and Whitmore to Smith; but subsequently to the sales aforesaid, had notified defendants not to deliver the stones to the plaintiff; and he afterwards gave Utt an order for the same, which order was given at the request of Whitmore, because said Whitmore had told witness that plaintiff had not complied with his contract.

It appeared that the charges upon the mill-stones were about sixty dollars; that the stones were delivered to Utt, he having paid said charges and given an indemnifying bond.

Upon this evidence, the court instructed the jury, that if Cornman, the bailor, forbid the delivery of the mill-stones to Smith, and ordered

the mill-stones to be delivered to Utt, and they were so delivered, the plaintiff could not recover. The court further held the law to be, that if Cornman, when he sold the mill-stones to Whitmore, was to pay the charges for freight and storage, which the defendants had on the same, then until said Cornman paid the charges on said stones, no property in said mill stones passed to said Whitmore by said sale, and if Cornman failed to pay the charges on said mill-stones, the sale of the same by Whitmore to plaintiff, passed no title to plaintiff.

The plaintiff thereupon took a non-suit, and afterwards moved to set it aside, which motion being overruled, he excepted and brings the case here by appeal.

The only question in the case, is the propriety of the instructions given by the circuit court. The last instruction assumes the law to be, that the sales from Cornman to Whitmore, and from Whitmore to Smith, were incomplete and ineffectual, until Cornman the vendor, paid the freight and charges, it being the understanding at the time of the sale, that he was so to do. The right of Smith to rescind his contract with Whitmore, and thereby revest the title in Whitmore, and of Whitmore to take the same course in relation to his contract with Cornman, because of Cornman's non-compliance with so much of his contract as required him to pay the freight and charges on the millstones, is unquestionable; but as neither Smith or Whitmore has thought proper to avail himself of this privilege, it is of no consequence in the decision of the present action.

It would be hard upon a bailee of goods, if he could not honestly decline to decide between conflicting claimants of the goods bailed, without subjecting himself to an action of trover. Nor do we suppose that if the bailee delivers up the goods to the order of the bailor, he can be made liable by reason of transfers from the bailor, subsequent to the bailment. This would be the law, where there are no special circumstances to show any variation from the ordinary liability of the bailees, as wharfingers or warehousemen.

Other questions are, however, presented by the facts of this case. There was evidence to show that the defendants acknowledged the title of Smith, and agreed to deliver him the goods, provided he would pay the charges, and give an indemnifying bond. This was evidence of a conversion proper to go to a jury. If the defendants delivered the goods to Utt, contrary to their understanding with Smith, it was clearly a conversion, and made them liable. Mills and others vs. Ball, 2 Bor. & Pul. 457; Judah and others v. Kemp. 2 John. Ca. 411; Patterson v. Robinson and others, 2 Maule & Selwy. 105.

There is a conflict of the testimony on some of the points involved, which leave the merits of the case uncertain. Cornman testified that his directions to the defendants in relation to the stones were prompted by Whitmore's declarations to him, that Smith had not complied with his bargain. Whitmore himself states that he sold to Smith, and that Smith paid him, and that he accompanied Smith to the store, of Bell & Stephens for the purpose of advising them of the transfer, and directed them to let Smith have the stones. This is a matter for the jury. The instructions given by the court were erroneous, and the case will be remanded for a new trial.

Judgment reversed.